# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

KRISTEN AGRAWAL, )
and BIMAL AGRAWAL, )
)
    Plaintiffs, )
)
v. )   Case No. 11-CV-087-GKF-TLW
)
FARMERS INSURANCE COMPANY, INC., )
)
    Defendant. )

## OPINION AND ORDER

This matter comes before the court upon the Motion for Summary Judgment (Dkt. #24) of the defendant Farmers Insurance Company, Inc. ("Farmers").

Plaintiffs Kristin and Bimal Agrawal are co-insureds on Farmers homeowners insurance policy no. 92563-07-52. The policy provides for $126,000 in dwelling coverage, $88,200 in personal property coverage, and $37,800 in loss of use coverage. On December 12, 2009, there was a fire at the home. Farmers points to two policy provisions in support of its motion. First, "*Intentional Acts*. If any **insured** directly causes or arranges for a loss to covered property in order to obtain insurance benefits, this policy is void. We will not pay you or any other **insured** for this loss." (Dkt. #24-2, p.14) (emphasis in original). Second, "*Concealment or Fraud*. This entire policy is void if any **insured** has knowingly and willfully concealed or misrepresented any material fact or circumstance relating to this insurance before or after the loss." *Id.* at 19 (emphasis in original).

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Federal Rule of Civil Procedure 56(a) "mandates the entry of

summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Adler v. Wal-Mart Stores, Inc.*, 144 F3d 664, 670 (10th Cir. 1998). A court must examine the factual record in the light most favorable to the party opposing summary judgment. *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995).

When the moving party has carried its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler*, 144 F.3d at 670. In essence, the inquiry for the court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Farmers argues it is entitled to summary judgment on the Agrawals' breach of contract claim because sufficient undisputed evidence exists for the court to hold that Bimal Agrawal started the fire which burned down the insured residence. Although Farmers has presented substantial circumstantial evidence that Mr. Agrawal's set the fire, the undisputed facts are not sufficient to establish that he did so, short of a jury trial. The authority Farmers cites is not supportive of a grant of summary judgment based on contested circumstantial evidence produced

in a motion. *See Pacific Ins. Co. v. Frank*, 452 P.2d 794, 797 (Okla. 1969) (the defense of arson is provable by circumstantial evidence at jury trial).

Farmers also argues it is entitled to summary judgment on the Agrawals' breach of contract claim because Mr. Agrawal knowingly and willfully concealed or misrepresented material facts to Farmers' investigators. "[M]ateriality is a mixed question of law and fact that can be decided as a matter of law if reasonable minds could not differ on the question." *Long v. Ins. Co. of N. Am.*, 670 F.2d 930, 934 (10th Cir. 1982).[1] "[A] misrepresentation will be considered material if a reasonable insurance company, in determining its course of action, would attach importance to the fact misrepresented." *Id.* "Most courts have construed materiality broadly, emphasizing that the subject of the misrepresentation need not ultimately prove to be significant to the disposition of the claim, so long as it was reasonably relevant to the insurer's investigation at the time." *Wagnon v. State Farm Fire and Cas. Co.*, 146 F.3d 764, 768 (10th Cir. 1998) (citations omitted).

In *Long*, the insurer responded to a claim arising out of an arson at the insured's residence. The insurer questioned the insureds as to whether they had stored items any place besides the home. The insureds denied having any storage, but later investigation revealed they had rented an off-site storage locker only two days before the arson took place. The Tenth Circuit held:

> "In the instant case, when the Longs gave their sworn statements they knew that arson caused the fire at their home and that the insurance company was carefully investigating their claim. In this context their misrepresentation that they had never stored belongings elsewhere, when they had rented a storage locker just two days before the fire occurred, is material as a matter of law. Reasonable minds could not differ as to whether an insurance company investigating the claim

---

[1] Plaintiffs contend that misrepresentation must be proven by clear and convincing evidence, but cite no authority applying that standard to the issue of whether a material misrepresentation voids an insurance policy. The cited authority applies to claims for fraud in the inducement and fraud.

3

would attach importance to the misrepresentation. Therefore, the trial court's grant of summary judgment to the insurance company is AFFIRMED."

*Long,* 670 F.2d at 934.

In this case, a number of things gave Farmers reason to believe that arson may have caused the fire at the Agrawal residence. Bartlesville fire fighters reported that when they arrived at the scene of the fire, the front door was unlocked. (Dkt. #24-7, p.3). There were no signs of forced entry or burglary. Mr. and Mrs. Agrawal were separated at the time of the fire, and Mr. Agrawal was living in a separate apartment. The fire started in the bedroom closet, and a cause and origin investigator reported that "a systematic examination of the fire scene produced no evidence of accidental sources of ignition." (Dkt. #24-9, p.2).[2] Five days after the fire, on December 19, 2009, a Farmers adjuster took a recorded statement of Mr. Agrawal. The following exchange took place:

> "Q: Do you know who has a key to the house? Do you, do you still have a key to the house?
> A: No, I don't.
> Q: Do you know who else would have a key, other than your wife?
> A: Ah, my daughter, and then my wife, I guess."

(Dkt. #24-11, p.7). Farmers contacted a private investigation firm, who interviewed Mr. Agrawal on December 28, 2009. The investigators reported:

> "We specifically ask him [sic] if he had keys to the house at the time of the fire. Numerous times he denies that he has keys. Eventually, when we tell him his wife said that he does, in fact, have keys, and [sic] he finally admits to having a set of keys. When asked why he would lie and/or suggest otherwise, he states that he did not think it was relevant. He also denies having and [sic] knowledge of involvement with the fire, whatsoever. (We note that he does appear nervous and uncomfortable during our direct questioning.)"

(Dkt. #24-17, p.11). Farmers took an Examination Under Oath of Mr. Agrawal on March 4, 2010, where this exchange took place:

---

[2] Mrs. Agrawal contends there were candles and a hair dryer in the closet, but offers no evidence that these items caused the fire.

4

> "Q: You had keys to the home on the day of the fire; didn't you, sir?
> A: Yes, I did.
> Q: Why did you lie to Farmers about that?
> A: Because, first of all, I thought it was irrelevant and, you know, at the time all kinds of things were happening, you know, just slipped my mind."

(Dkt. #24-27, p.11).

Farmers carefully investigated the Agrawals' claim. Because Mr. Agrawal lived in a separate apartment, it was reasonable and important for Farmers to inquire if Mr. Agrawal had access to the house. Because the house was unlocked when fire fighters arrived, it was reasonable and important for Farmers to ascertain who had keys to the house. Mr. Agrawal clearly and repeatedly denied having keys to the house. He confessed to having a key to the house only when he was confronted with Mrs. Agrawal's statement that he did, in fact, have a key. When given the opportunity to explain this contradiction, he stated he thought it was "irrelevant" and had "slipped his mind." However, when initially asked whether he had a key to the house, Mr. Agrawal did not respond that the question was irrelevant; he answered "No, I don't." When asked who other than his wife would have a key, he stated his daughter did. Mr. Agrawal does not explain why his possession of a key would have "slipped his mind" in two separate interviews nine days apart. Even if Mr. Agrawal lied because he thought the question was irrelevant, his deception was nonetheless knowing and willful.

Plaintiffs offer an explanation for Mr. Agrawal's contradictory statements, arguing that "[t]he locks on the door to the family home had been changed. There were therefore two sets of keys to the house. Mrs. Agrawal had control of a second set of keys as well as an original set of keys. So Mr. Agrawal was confused." (Dkt. #34, p.4). Though Mrs. Agrawal had changed the locks and initially did not give Mr. Agrawal a key, the record is clear that she later decided to give him the key he had at the time of the fire. Mr. Agrawal never expressed confusion as to

whether Farmers or the investigator were asking about an old set of keys to locks no longer on the house, or about a second set of keys in Mrs. Agrawal's possession. The argument is without merit.

The court holds that whether Mr. Agrawal had keys to the home was a material fact because a reasonable insurance company, in determining its course of action, would attach importance to the fact. Mr. Agrawal's misrepresentation that he did not have a key is material as a matter of law. Reasonable minds could not differ as to whether an insurance company investigating the claim would attach importance to the misrepresentation. Because Mr. Agrawal knowingly and willfully concealed or misrepresented material facts to Farmers' investigators, the insurance policy is void. Because the policy is void, Farmers cannot be liable for breach of contract or bad faith to either of the co-insureds.

In the alternative, Farmers is entitled to summary judgment on the Agrawals' bad faith claim. To prevail on a bad faith claim, a plaintiff must show, *inter alia*, that "[The Insurer's] refusal to pay the claim in full was unreasonable under the circumstances, because . . . it had no reasonable basis for the refusal." OUJI-Civ (2d) 22.2; *see Badillo v. Mid-Century Ins. Co., Inc.*, 121 P.3d 1080, 1093 (Okla. 2005). "[A]n insurer clearly has the right to litigate any claim to which the insurer has a reasonable defense." *Claborn v. Washington Nat'l Ins. Co.*, 910 P.2d 1046, 1051 (Okla. 1996). The undisputed evidence demonstrates that Farmers had a reasonable basis to deny the claim because Mr. Agrawal had violated the Concealment or Fraud provision of the policy. Additionally, Farmers had a reasonable basis for denying the claim because it reasonably believed Mr. Agrawal had violated the Intentional Acts provision of the policy.

In the alternative, Farmers is entitled to summary judgment on the Agrawals' claim for punitive damages. For punitive damages to attach, the plaintiff must show the defendant

"recklessly disregarded" its duty to deal fairly and act in good faith. OUJI-Civ (2d) 22.2. As previously set forth, Farmers acted reasonably in denying the claim. The evidence raised by the plaintiffs does not demonstrate reckless disregard.

WHEREFORE, the Motion for Summary Judgment (Dkt. #24) of defendant Farmers Insurance Company, Inc. is granted.

DATED this 17th day of January, 2012.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma